BRODSKY & SMITH, LLC
Evan J. Smith (SBN 242352)
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Tel.:  (310) 300-8425
Fax:  (310) 247-0160
esmith@brodsky-smith.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIZARRO, et al.,<br><br>                    Plaintiffs,<br><br>vs.<br><br>INTERNATIONAL COFFEE &<br>TEA, LLC.,<br><br>                    Defendant. | Case No. CV 06-7448 PSG (JTLx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND APPROVAL OF INCENTIVE AWARD**<br><br>Date:        May 19, 2008<br>Time:       1:30 p.m.<br>Place:      Courtroom 790 Roybal |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND APPROVAL OF INCENTIVE AWARD**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iv

INTRODUCTION    ..............................................................................................1

I.    SUMMARY OF THE ARGUMENT..............................................................1

II.   AWARD OF ATTORNEYS' FEES ..............................................................3

    A.    Factors Considered By Courts In The Ninth Circuit In
        Determining Fee Awards Support The Requested Award...................3

        1.    The Results Achieved Viewed In Light Of The
             Risks of The Litigation ................................................3

            a.    The Settlement Is An Excellent Result...............................4

            b.    Plaintiffs Faced Substantial Hurdles To
                Proving Liability and Damages ...........................5

        2.    The Skill Required and The Quality Of Representation ...........7

        3.    The Contingent Nature Of The Fee And The
             Financial Burden Carried By Lead Counsel..............................8

    B.    An Analysis of Lead Counsel's Lodestar Supports
        The Requested Fee Award .......................................................9

        1.    Reasonable Number of Hours…………………………..10

        2.    Reasonable Hourly Rate…………………………………11

            a.    Hourly rates for Brodsky & Smith attorneys…………..11

    C.    Recovery of Fees Under California Law……………………………..12

        1.    Applicability of California Law………………………………13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND
APPROVAL OF INCENTIVE AWARD**

D.   The Reaction of The Class Supports The Fee Request........................14

III.   LEAD COUNSEL IS ENTITLED TO REIMBURSEMENT
FOR ITS REASONABLE LITIGATION EXPENSES..............................14

IV.   CLASS REPRESENTATIVES' INCENTIVE AWARD SHOULD
BE APPROVED……………………………………………………………..15

V.   CONCLUSION ..........................................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND
APPROVAL OF INCENTIVE AWARD

# TABLE OF AUTHORITIES

**Cases**

*In re Ryland Homes Securities Class Action Litigation*, N.D.Tx, 3:04-cv-073-B . 12

*Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541 (1984)............................................11

*Churchill Vill. L.L.C. v. GE,* 361 F.3d 566 (9th Cir. 2003).........................................5

*Comite De Jornaleros De Redondo Beach v. City of Redondo Beach,* 2006 WL 4081215 (C.D. Cal., Dec. 12, 2006) .....................................................12

*Cortes v. Metropolitan Life Ins. Co.,* 380 F.Supp.2d 1125 (C.D.Cal., 2005) .........12

*Denney v. Jenkens & Gilchrist,* 2005 WL 388562 (S.D.N.Y. Feb 18, 2005).........16

*Dodson v. Albertson's, Inc.,* 2008 WL 298823 (E.D. Cal. Feb. 1, 2008) ...............12

*Fisher v. SJB-P.D. Inc.,* 214 F.3d 1115 (9th Cir. 2000).............................................9

*Gates v. Deukmejian,* 987 F.2d 1392 (9th Cir. 1992)...............................................11

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) .....................................................15

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)........................................................3, 13

*In re Aremisoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002).............................6

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602 (9th Cir. 1997)........................................................................................9

*In re Dun & Bradstreet Credit Servs. Customer Litig.,* 130 F.R.D. 366 (S.D. Ohio 1990)....................................................................................................................16

*In re Equity Funding Corp. Sec. Litig.,* 438 F. Supp. 1303 (C.D. Cal. 1977)...........7

*In re Heritage Bond Litigation*, No. 02-ML-1475 (RCx), 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005)...........................................................3, 14, 16

*In re Manufacturers Life Ins. Co. Premium Litig.,* 1998 U.S. Dist. LEXIS at *17 ..6

*In re Manufacturers Life Ins. Co. Premium Litig.,* MDL No. 1109, 1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 18, 1998)...............................................................6

*In re Mego Fin. Corp. Sec. LItig.,* 213 F.3rd 454 (9th Cir. 2000).............................15

*In re Million Little Pieces Consumer Fraud Class Action Litigation,* S.D.N.Y., 07-MDL-1771...............................................................................................................12

*In re Xcel Energy, Inc.,* 364 F.Supp 2d 980 (D. Minn. 2005).................................16

*Lealao v. Beneficial California,* Inc.,97 Cal. Rptr. 2d 797 (Cal. Ct. App.2000) ....14

*Lopez v. San Francisco Unified School District,* No. C 99-3260 SI (EMC), 2004 U.S. Dist. LEXIS 21970 (N.D. Cal. Oct. 5, 2004).......................................................6

*Lucas v. K-Mart Corporation,* 99-cv-01923-JLK (D. Col.).....................................16

*Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir. 1995).......................13

*Mathis v. Exxon Corp.,* 302 F.3d 448 (5th Cir. 2002)...............................................13

*Pereria v. Ralph's Grocery Company*, 07-841...........................................................7

*Pub. Serv. Co. of Colo. v. Continental Cas. Co.,* 26 F.3d 1508 (10th Cir. 1994) ....13

*Razilov v. Nationwide Mut. Ins, Co.,* 2006 WL 3312024 (D. Or. Nov. 13, 2006)..16

*Van Vranken v. Atlantic Richfield Co.,*  901 F. Supp. 294 (N.D. Cal. 1995)....16, 17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...........................*passim*

*Wallace v. Consumers Cooperative of Berkeley, Inc.,*  216 Cal. Rptr. 649 (Cal. Ct. App. 1985)...............................................................................................................13

*Webb v. Ada County,* 285 F.3d 829 (9th Cir. 2002) ................................................11

**Statutes**

42 U.S.C. § 12205.....................................................................................................14

Cal. Code Civ. P. § 1032(b)......................................................................................14

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND APPROVAL OF INCENTIVE AWARD**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   INTRODUCTION

In connection with the approval of the Settlement in this Action, Court-appointed Lead Counsel, Brodsky & Smith, LLC ("Brodsky & Smith" or "Lead/Class Counsel") hereby respectfully moves the Court for: i) an award of attorneys' fees of $170,000.00, plus accrued interest; ii) reimbursement of $80,000.00 in expenses, plus accrued interest, that were incurred in prosecuting this Action and iii) an incentive award of $10,000.00 to the individual class representatives.  Plaintiffs submit the Fee Declaration of Evan Smith in support of this request.[1]

# II.   SUMMARY OF THE ARGUMENT[2]

Lead Counsel has secured significant non-monetary relief in the nature of complete accessibility pursuant to the applicable federal and state law at all of Defendant International Coffee & Tea, LLC's ("Defendant" or the "Company") California company owned locations.  In addition, Lead Counsel has created a monetary settlement fund in the amount of $500,000.00 (the "Settlement Fund").[3]

Prior to exploring settlement with Defendants, Lead Counsel undertook an investigation of the Company's stores with respect to accessibility to the class members and drafted a detailed complaint setting forth the fruits of this private investigation.  Lead Counsel also consulted with experts and researched the applicable law with respect to the claims asserted in the Action and the potential defenses thereto.  This investigation commenced before the filing of the initial

---

[1] All references to "Smith Fee Decl." refer to the Declaration supporting this fee and expense request. All references to "Smith Decl." refer to the Smith Declaration in Support of Final Approval of the Settlement.

[2] Rather than repeat it here, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities in Support of Final Approval of the Settlement for a full discussion of the History and Background of the action.

[3] Pursuant to the Settlement Agreement, Coffee Bean has already made an additional interest payment of $6,333.33 to the Settlement Fund, and the funds will continue to earn interest for the benefit of the Class until Final Approval and Distribution.  *See* Smith Decl. in Support of Final Approval at Exhibit "O."

complaint in October of 2006 and continued until November 2007, when the Parties consummated a resolution of the Action.  Lead Counsel also filed a detailed class certification motion, propounded voluminous interrogatories, document requests and requests for admissions, conducted an extensive meet and confer process on Plaintiffs' discovery requests, and reviewed thousands of pages of documents produced by Defendant during discovery.  As a result of this extensive work, Lead Counsel developed an in-depth knowledge of the circumstances surrounding the subject matter of the Class' claims, which formed the basis for Lead Counsel's ability to negotiate the instant recovery.  While the settlement process required six months of committed efforts through mediation and documentation of the settlement papers, Lead Counsel persevered, and then devoted additional time preparing preliminary approval papers, overseeing the Claims Administrator and preparing the final approval papers for this Court.  *See generally* Smith Fee Decl.

As compensation for these efforts, Lead Counsel respectfully requests that the Court award the fee request of $170,000.00, plus accrued interest.  This amount is commensurate with the benchmark hourly rate in this Circuit for non-class ADA cases, and below the reasonable fee in class action cases and for the Los Angeles legal community in general.  It is likewise fair and reasonable based upon a lodestar application.  Lead Counsel also seeks reimbursement of out-of-pocket and incurred expenses in the amount of $80,000.00 which were reasonably incurred in prosecuting the claims against Defendant.  For the reasons set forth below, Lead Counsel respectfully submits that the requested award of attorneys' fees and request for reimbursement of expenses is fair and reasonable under the applicable legal standards set forth below.

In addition, the extraordinary results of this litigation could not have been achieved without the participation and time and efforts devoted by the three

individual class representatives.  As such, Plaintiffs respectfully request the incentive award of $10,000.00 for each class representative be approved.

## III.    AWARD OF ATTORNEYS' FEES

### A.    Factors Considered By Courts in the Ninth Circuit in Determining Fee Awards Support the Requested Award

The Ninth Circuit has articulated five factors as pertinent criteria for evaluating the reasonableness of a fee request:

> (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the Plaintiffs; and (5) awards made in similar cases.

See *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Consideration of each of these factors supports approval of the requested attorneys' fees.

### 1.    The Results Achieved Viewed in Light of the Risks of the Litigation

The most critical factor to be considered in granting a fee award is the degree of success obtained.  *In re Heritage Bond Litigation*, No. 02-ML-1475 (RCx), 2005 U.S. Dist. LEXIS 13627, at *27 (C.D. Cal. June 10, 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  The excellent result – complete remediation of all of Defendant's 186 California company owned locations to comply fully with state and federal accessibility laws - wholly supports the fee request on its own.  The fact that there is a Settlement Fund of $500,000.00 created whereby each class member who submitted valid claims will receive over $1,800.00, should further persuade this Court to approve the request.

### a.      The Settlement Is An Excellent Result

Lead Counsel's efforts produced a complete recovery of all that was sought in the operative complaint with respect to the injunctive relief requested under Title III of the ADA and of the state law claims under Unruh and the CDPA.  After reviewing the Settlement Agreement and the site review checklist developed therefrom, ADA architectural expert, Gina Hilberry, AIA, rendered the opinion that "this settlement will result in significant improvements to access on a chain wide basis and in compliance with Federal disability statutes."  *See* Hilberry Report (attached to Smith Decl. as Exhibit "F").  She further opined that the site review checklist "is quite complete and represents a very good and extensive description of the work items required in architectural terms…and will result in a thorough review of existing conditions, and an organized and effective approach to necessary repairs and compliance with Federal disability laws."  *Id.*  Finally, she concluded that "the remediation plan is sound" and the settlement agreement "represents a solid approach…which will result in compliance with the ADA Architectural Guidelines." *Id.*  Simply put, Lead Counsel could not have secured a better result for the Plaintiffs or the Class with respect to their requested injunctive relief.

With respect to the Settlement Fund created, there have been only a handful of damages settlement funds created for a class of disabled individuals in the history of ADA litigation.  Specifically, in this action, each class member who participates in the settlement, in addition to receiving the benefits of the injunctive relief obtained, will receive over $1,800.00 for submitting a valid claim.  This translates into over a 45% recovery of their maximum statutory damage permitted under state law in the amount of $4,000.00.

Moreover, Judge Joel B. Rosen (D.NJ) (ret.) has rendered the following opinion on the settlement:

> I believe this settlement was a complex and difficult case to settle in my experience as a mediator, litigator and former federal judge.  As discussed below, I believe that the settlement represents a significant recovery and outcome that is reasonable and fair for the Class and all parties involved, especially considering there have only been a handful of class action ADA settlements of which I am aware..... I believe it was in the best interests of all of the parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial, and that they agree upon the settlement now before the Court...I recommend without reservation: 1) final approval of the settlement, 2) Class Counsel's fee and expense request in its entirety, and 3) the total incentive award request.

Rosen Decl. at ¶¶ 2, 5, 8 (Exhibit E to Smith Decl.).

Such a result is an extraordinary achievement, one that no class member objected to.  Smith Decl. ¶¶ 7-8; Holland Decl at ¶ 11 (Exhibit D to Smith Decl.).  Thus, the proposed Settlement justifies the fee requested by Lead Counsel.  *See Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *27 (finding recovery of 23% of net loss an "exceptional result in a securities class action.").

### b. Plaintiffs Faced Substantial Hurdles to Proving Liability and Damages.

As set forth in the Declaration and in the Final Approval Settlement Memorandum, Plaintiffs faced some formidable defenses to class certification, liability and damages.  Defendant's opposition to class certification and arguments at the mediation asserted several defenses to liability and damages.

Indeed, as the Court is well aware, the motion for class certification was pending at the time the parties consummated the Settlement.  Assuming the Court granted class certification, Lead Counsel anticipated that Defendant would mount a strong attack on Plaintiffs' ability to prove liability and damages.  *See Churchill Vill. L.L.C. v. GE,* 361 F.3d 566, 576 (9th Cir. 2003) (holding that district court properly

weighed risk when it concluded defendant's belief that it had strong case on merits supported finding of risk). Thus, it is beyond doubt that Plaintiffs faced substantial uncertainties concerning the ability to prevail on damages. *In re Manufacturers Life Ins. Co. Premium Litig.,* MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *16 (S.D. Cal. Dec. 18, 1998) ("even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings") (citation omitted).

Although Plaintiffs would present expert testimony to sustain their burden on the damage issues, and to rebut the arguments that Defendant would make, one cannot predict how a jury would weigh competing experts' testimony. In other words, the crucial element of damages would likely be reduced at trial to a "battle of the experts." Many courts have recognized that the outcome of such a battle is unpredictable. *See In re Manufacturers Life Ins. Co. Premium Litig.,* 1998 U.S. Dist. LEXIS at *17 (" . . . further litigation in this case, as in many class actions, would in all probability be complicated, lengthy, expensive, and hard fought. At a trial, there would likely be a battle of experts on myriad complex factual questions, . . ."); *Lopez v. San Francisco Unified School District,* No. C 99-3260 SI (EMC), 2004 U.S. Dist. LEXIS 21970, at *14 (N.D. Cal. Oct. 5, 2004) quoting *In re Aremisoft Corp. Sec. Litig.,* 210 F.R.D. 109, 125 (D.N.J. 2002) ("Regardless of the strength of case counsel might present at trial, victory in litigation is never guaranteed."). Lead Counsel has sufficient experience to recognize that in such a battle, there exists the substantial possibility that a trier of fact could be swayed by Defendant's experts, who would seek to minimize or eliminate the amount of Plaintiffs' losses by showing that there were no damages and no intent was found to have existed under the state law claims.

## 2.     The Skill Required and the Quality of Representation

As this Court recognized in *Heritage Bond,* the "prosecution and management of a complex [] class actions requires unique legal skills and abilities."  2005 U.S. Dist. LEXIS 13627, at *39 (citation omitted).  Those unique skills were called upon in this Action to achieve this excellent Settlement.  Less adept, experienced, or determined lawyers may not have obtained this Settlement, or a settlement of comparable value.  Lead Counsel undertook a substantial investigation and crafted a detailed and persuasive complaint.  Lead Counsel also drafted a persuasive mediation statement which positioned Plaintiffs well and allowed Lead Counsel to negotiate this Settlement.

Plaintiffs' counsel is qualified to represent the class.  Plaintiffs' counsel has extensive experience in civil rights, class action and complex litigation matters.  It has been appointed lead, co-lead and/or liaison counsel in class action and/or complex litigation matters in several state and federal courts across the country.  *See* Brodsky & Smith, LLC's website at www.brodsky-smith.com.  Brodsky & Smith, LLC was preliminarily appointed Class Counsel in this ADA matter and was also appointed Class counsel by Judge Percy Anderson in a similar ADA case that was certified over objections from Defendant in this District in July, 2007 in *Pereria v. Ralph's Grocery Company*, 07-841.  *See* Brodsky & Smith, LLC firm profile (attached to Smith Decl. at Exhibit "M"). Indeed, Judge Rosen was pleased with Lead Counsel's work product, professionalism and willingness and desire to negotiate the fee outside of the Settlement Fund.  *See* Rosen Decl. ¶¶ 6-8.

The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Counsel.  *See In re Equity Funding Corp. Sec. Litig.,* 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (court recognized that "plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").  Defendant here was vigorously

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS; AND APPROVAL OF INCENTIVE AWARD**

7

represented by a prominent law firm with extensive experience in defending class actions.  The ability of Lead Counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition further reflects the superior quality of Lead Counsel's work.  In fact, Judge Rosen stated that:

> The advocacy on both sides of the case was outstanding.  The work, creativity and zeal that Class Counsel put into this process was significant.  The settlement is a direct result of Class Counsel's experience, reputation and ability in these types of cases.  It is also clear to me that Class Counsel could not have obtained the recovery they did here without their clients serving in their capacity or without the ability to go toe-to-toe with the top notch defense lawyers at Littler Mendelson, P.C. and their sophisticated client, International Coffee Bean & Tea, LLC, whose general counsel attended the entire mediation – all of whom displayed the highest level of professionalism in carrying out their duties on behalf of their representative clients.

*See* Rosen Decl. at ¶ 7.

As a result, Judge Rosen recommended "without reservation" the approval of the entire fee and expense request and incentive award stating "I [] believe Lead Counsel's fee request . . . is fair and reasonable in light of the significant and complete accessibility remediation achieved at all of the Defendant's California company owned locations and the monetary fund obtained on behalf of the Class.  *Id.* As such, this factor favors the approval of this fee request.

### 3. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

It has been a long-recognized rule that an attorney is entitled to a much larger fee when the compensation is contingent rather than being fixed on a time or contractual basis.  *See Vizcaino*, 290 F.3d at 1048-50.  As stated by the Ninth Circuit Court of Appeals in *WPPSS:*

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency

> cases. . . . as a legitimate way of assuring competent
> representation for plaintiffs who could not afford to pay on an
> hourly basis regardless whether they win or lose.

*Id.* at 1299-1300 (internal citations and quotations omitted).

From the commencement of this Action, Lead Counsel has not received any payment for its efforts in prosecuting the Action on behalf of the Class and has advanced $29,255.19 of its own money and has incurred an invoice for another $50,000.00 in order to monitor the compliance achieved in this settlement. In so doing, Lead Counsel has invested over 545 hours in the case. The significant outlay of cash and personnel resources by Lead Counsel has been completely at risk and wholly dependent upon obtaining a substantial recovery for the Class. In this atmosphere, where ADA cases are tried, mooted, lost or appealed in this Circuit, the contingent nature of the representation takes on even greater risk and fully warrants the fee request in this Action.

### B. An Analysis Of Lead Counsel's Lodestar Supports The Requested Fee Award.

Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit when a settlement fund is created, a cross-check of the fee request with the lodestar demonstrates the reasonableness of the requested fee award. *See Vizcaino*, 290 F.3d at 1048-50. *See also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602 (9th Cir. 1997) (comparison of the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness); *Heritage Bond*, 2005 WL 1594389, at *16 (same).

The starting point for calculating the amount of a reasonable fee is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Fisher v. SJB-P.D. Inc.,* 214 F.3d 1115 (9th Cir. 2000).

**1.      Reasonable Number of Hours.**

A breakdown of the hours billed by each attorney at Brodsky & Smith, LLC is stated in ¶ 4-5 to the Smith Fee Decl.  During the course of this Action, Lead Counsel conducted an extensive investigation and research that was critical to the success of the case.  This investigation included, among other things, retention and interface with experts to investigate Coffee Bean locations to determine existing accessibility violations and legal research regarding multiple ADA and class action issues; interviews of class members and class representatives; research and briefing of class certification motion; extensive discovery, including, but not limited to, thousands of pages of documents, and propounding voluminous interrogatories, document requests and requests for admissions and engaging in extensive meet and confers regarding said discovery; preparation of detailed mediation memorandum and attending a day long mediation before the Honorable Joel B. Rosen, D.NJ (ret.); and lengthy negotiations pertaining to the memorialization of the settlement agreement and preliminary approval documents and notice plan.  Counsel also prepared the final approval papers and the instant application.  *See* Smith Declaration at ¶2; Rosen Declaration at ¶ 3, 7.

To accomplish these tasks, Lead Counsel billed 547.2 hours.[4]  Smith Fee Decl. ¶ 5.  The number of hours billed is reasonable in light of the work performed to achieve the result in this action.  Judge Rosen even rendered the opinion that

> Lead Counsel's fee request in the amount of One Hundred and Seventy Thousand Dollars ($170,000.00) in fees and request for reimbursement of expenses incurred, and to be incurred for compliance monitoring, in the amount of Eighty Thousand Dollars ($80,000.00), plus interest accrued pursuant to the terms of the settlement

---

[4] Lead Counsel also expects to bill an additional 50 hours of time for preparing, attending and traveling to and from the final approval hearing on May 19, 2008, and another approximate 65 hours for monitoring compliance and potential dispute resolution pertaining to the remediation program. Smith Fee Decl at ¶ 4.

1
2
3

> agreement, is fair and reasonable in light of the
> significant and complete accessibility remediation
> achieved at all of the Defendant's California locations
> and the monetary fund obtained on behalf of the Class.

4

Rosen Decl. at ¶ 6.

5

### 2. Reasonable Hourly Rates.

6
7

Hourly rates must reflect the prevailing market rates in the relevant

8

community. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541 (1984). This rate is

9

usually derived from the District in which the court sits. *Gates v. Deukmejian,* 987

10

F.2d 1392 (9th Cir. 1992). The experience, skill and reputation of the attorney

11

requesting fees are taken into account. *Webb v. Ada County,* 285 F.3d 829 (9th Cir.

2002).

12
13

In this case, the Court's determination of the reasonable hourly rate should also

14

be influenced by the fact that this is a class action and the settlement affects 186

15

Coffee Bean locations across California. Because of the significant resources and

16

skill required, as well as the risks entailed, to litigate large-scale actions on behalf of

17

a class, relatively few attorneys handle such cases. Thus, the relevant community for

18

purposes of determining a reasonable billing rate for Lead Counsel should also

19

consist of attorneys who litigate complex, statewide or nationwide, class actions.

### a. Hourly rates for Brodsky & Smith attorneys

20
21

Lead Counsel seeks a rate of $350.00 per hour for work performed by Brodsky

22

& Smith attorneys. The Brodsky & Smith attorneys who billed time on this action

23

have over 40 years of experience between them and concentrate their practice in

24

litigation, class action and ADA areas. Smith Decl. Exhibit "M." Brodsky & Smith

25

attorneys have been appointed lead counsel in state and federal court matters in

26

California and other jurisdictions across the country. *Id.*

27

Significantly, the $350.00 per hour rate is relatively low compared to the

28

prevailing rate for attorneys in the Los Angeles community, and is consistent with the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS; AND
APPROVAL OF INCENTIVE AWARD**

prevailing rate for <u>non-class</u> ADA litigation. *See Comite De Jornaleros De Redondo Beach v. City of Redondo Beach,* 2006 WL 4081215, *3 (C.D. Cal., Dec. 12, 2006) (holding that plaintiff's request for hourly rates ranging from $360.00 for a fourth year attorney to $725.00 for a 25 year attorney was reasonable) and *Dodson v. Albertson's, Inc.,* 2008 WL 298823, *3 (E.D. Cal. Feb. 1, 2008) (holding that a rate of $350.00 an hour was appropriate for the lead counsel in the action).[5]

Moreover, the reasonable hourly rate for counsel representing a class is substantially more than the requested $350.00 per hour.[6]  Indeed, Brodsky & Smith has been awarded fees as Lead Counsel in class action matters ranging from $475.00 - $500.00 per hour, and has successfully submitted affidavits in other complex commercial and class action matters for fees in excess of $400.00 per hour.[7]  Smith Fee Decl. at ¶ 5.

Finally, while Lead Counsel believes that its work and the results obtained would certainly warrant a multiplier, no such additional fees have been sought or are requested here pursuant to the settlement agreement.

## C.  Recovery Of Fees Under California Law.

In the alternative, Lead Counsel's request for fees should be granted under California law.

---

[5] While *Dodson* is an Eastern District decision, it serves to establish that if a rate of $350.00 an hour is reasonable for a single ADA action involving one shopping center, it is more than reasonable to seek the same rate for an ADA case involving hundreds of locations across the state for a class of disabled persons.

[6] *See Cortes v. Metropolitan Life Ins. Co.***,** 380 F.Supp.2d 1125 (C.D.Cal., 2005) (noting rates for ERISA work ranging from $400.00 -$475.00 per hour).

[7] *See e.g. In re Ryland Homes Securities Class Action Litigation*, N.D.Tx, 3:04-cv-073-B ($500.00/hour approved), *In re Million Little Pieces Consumer Fraud Class Action Litigation,* S.D.N.Y., 07-MDL-1771 ($475.00/hour approved); and *In re Viacom Derivative Shareholder Litigation,* Supreme Court New York, New York County, Index No. 602257/05 ($475.00/hour approved).

1        **1.        Applicability of California Law.**

2        State law controls both the award of and the reasonableness of fees awarded

3    where state law supplies the rule of decision.  *See, e.g.  Vizcaino v. Microsoft Corp*.,

4    290 F.3d 1043, 1047 (9th Cir. 2002) (holding that "[b]ecause Washington law

5    governed the claim, it also governs the award of fees."); *Mathis v. Exxon Corp.*, 302

6    F.3d 448, 461 (5th Cir. 2002); *Pub. Serv. Co. of Colo. v. Continental Cas. Co.,* 26

7    F.3d 1508, 1520 (10th Cir. 1994).  Where, as here, a plaintiff prevails on both state

8    and federal claims, fees may be awarded under state law.  *See, e.g.  Mangold v. Cal.*

9    *Pub. Utils. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995) (holding that where a

10    plaintiff prevails on both state and federal claims the court may award a fee multiplier

11    based on state law).  Thus, if a plaintiff prevails on a state law claim, and state law

12    permits recovery under the common fund or enhanced lodestar doctrines, then the

13    plaintiff may seek a fee recovery based on these doctrines.  *See, e.g. Mangold,* 67

14    F.3d at 1478-79 (affirming an award of a fee multiplier based on state law); *Vizcaino*,

15    290 F.3 at 1047-48 (holding that where a state law claim resulted in a settlement

16    fund, the lower court correctly applied the common fund doctrine based on state

17    law.).

18        In this case, Plaintiffs prevailed on both their federal claim, and their claims

19    under California state law, resulting in a California Damages Settlement Fund of

20    $500,000.00.[8]  Thus, the requested fee may be approved based on California law.[9]

21    _____

22    [8] The word "prevail" is a term of art in the context of an agreed-upon settlement, as opposed to
litigation pursued to judgment.  In the context of a negotiated settlement like that here, "prevail"

23    does not mean to have obtained a judgment in one's favor.  Rather, plaintiffs are considered
prevailing "if they succeed on any significant issue in litigation which achieves some of the benefit

24    the parties sought in bringing suit."'  *Wallace v. Consumers Cooperative of Berkeley, Inc.,*  216 Cal.
Rptr. 649, 658 (Cal. Ct. App. 1985) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

25

26    [9] Under California law, [T]he primary method for establishing the amount of "reasonable" attorney
fees is the lodestar method:

27

28        The lodestar (or touchstone) is produced by multiplying the number of
    hours rreasonable expended by counsel by a reasonable hourly rate.  Once

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED
MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS; AND
APPROVAL OF INCENTIVE AWARD**

13

**D.     The Reaction of the Class Supports the Fee Request**

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee.  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *48-*50 ("The presence or absence of objections is also a factor in determining the proper fee award.").

Here, Class Members were informed in the Notice that Lead Counsel would apply for attorneys' fees in the amount of $170,000.00, plus expenses not to exceed $80,000.00, and were advised of their right to object.  Despite having mailed in excess of 10,000 Notices, publication of the Notice in the *LA Times* and several other disability magazines/publications, not a single Class Member has filed an objection to the request for attorneys' fees or expenses, or any other aspect of the Settlement.  *See generally* Smith Decl. at ¶¶ 4-6, Holland Declaration ¶¶ 6-11.  The *absence* of any objection clearly supports the fee request.

**III.     LEAD COUNSEL IS ENTITLED TO REIMBURSEMENT FOR ITS REASONABLE LITIGATION EXPENSES**

Under both California law and the Law of this Circuit, reasonable costs may be awarded to successful plaintiffs in a class action.  *See* Cal. Code Civ. P. § 1032(b) ("[A] prevailing party is entitled as a matter of right to recover costs in any action or proceeding."); *Vaszlavik,* slip op. at 7 ("As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to an award of costs because they prevailed on their claims under the ADA.")  42 U.S.C. § 12205 (prevailing party entitled to award of costs).

---

the Court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.

*Lealao v. Beneficial California*, Inc.,97 Cal. Rptr. 2d 797, 803 (Cal. Ct. App.2000).

Here, Lead Counsel requests reimbursement of $80,000.00 for out-of-pocket expenses incurred in prosecuting this Action.  These expenses were incidental and necessary to the effective representation of the Settlement Class.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  More than 80% of the costs incurred were related to the retention of experts, investigator and mediator.  The remainder of the costs arose from copying charges, on-line research, messenger services, express mail and next day delivery, transportation, meals, and other incidental expenses directly related to the prosecution of the Action.  *See* Smith Fee Decl. ¶ 7.  *See also Harris*, 24 F.3d at 19 (Counsel "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citations omitted).  Consequently, Lead Counsel respectfully submits that the expense request should be granted in its entirety.

## IV.   CLASS REPRESENTATIVES' INCENTIVE AWARD SHOULD BE APPROVED.

In connection with the motion for final approval of the settlement of this action, Plaintiffs respectfully seeks this Court's approval for an award of Ten Thousand Dollars ($10,000.00) to the class representatives for the mobility impaired (Ray Pizarro), the hearing impaired (Deborah Robinson) and the visual impaired (Mayra Espinoza).  This modest award should be approved in light of the significant effort expended by each representative and the substantial non-monetary and monetary benefits that each has created for all of those similarly situated as a result of the settlement of this action, as well as for their assistance in settling this Class Action.[10]

As noted *In re Mego Fin. Corp. Sec. LItig.,* 213 F.3rd 454, 458-62 (9th Cir. 2000) (affirming district court's approval of awards to class representatives), federal

---

[10] *See generally,* Declarations of Ray Pizarro, Deborah Robinson and Mayra Espinoza in Support of the Final Approval of the Class Settlement attached to Smith Decl. as Exhibits "G, H, and I," respectively. ("Lead Plaintiff Declarations").

courts have discretion to award reasonable awards to representative plaintiffs in light of the important role they play.  Courts in this District and Circuit, and other federal courts, have held that reasonable compensatory awards are appropriate.  *See, e.g. In re Heritage Bond LItig.,* 2005 WL 1594403, **17-18 (C.D. Cal. June 10, 2005) (awarding lead plaintiffs a combined $57,500 in awards in recognition of their participation); *Van Vranken v. Atlantic Richfield Co.,*  901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 award to plaintiff who did not receive significant personal benefit from common fund).  Indeed, in *Lucas v. K-Mart Corporation,* 99-cv-01923-JLK (D. Col.), the District Court approved an incentive award to three Class representatives in the amount of $10,000.00 each.

This principle was recently reaffirmed by the U.S. District Court for the District of Minnesota: "[s]uch enforcement is vital because if there were no individual [] willing to step forward and pursue a claim on behalf of other[s similarly situated], many violations of law might go unprosecuted."  *In re Xcel Energy, Inc.,* 364 F.Supp 2d 980, 1000 (D. Minn. 2005).  *See also, Denney v. Jenkens & Gilchrist,* 2005 WL 388562, *31 (S.D.N.Y. Feb 18, 2005) (approving $10,000 awards for each lead plaintiff based on the common law's recognition of the important policy role that plaintiffs play in representative action; *In re Dun & Bradstreet Credit Servs. Customer Litig.,* 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding two class representatives $55,000 each and three class representatives $45,000 each).

The criteria that federal courts in this Circuit use when considering whether to approve an award include:  (1) the risk to the plaintiff in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the plaintiff; (3) the time and effort spent by the plaintiff; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the plaintiff as a result of the litigation.  *See Van Vranken,* 901 F. Supp. At 299; *see also Razilov v. Nationwide Mut. Ins, Co.,* 2006 WL 3312024 (D. Or. Nov. 13, 2006) (approving

application for $10,000 award for lead plaintiff in light of time and effort spent, the insignificant benefits the lead plaintiff would receive as a result of the litigation, and the significant benefits achieved in the settlement on behalf of the class).  Here, the class representatives attended mediation, regularly kept in touch with counsel regarding the litigation and settlement terms, spent hours in connection with the prosecution of the action, and in particular, the settlement negotiations, the settlement documents and the ongoing monitoring of the status of the remediation program in place as a result of the settlement.  *See* Lead Plaintiffs' Declarations ¶¶ 3-10.

Importantly, the proposed award in this Action is modest when compared with awards approved by federal courts in this district and nearby districts.  *See, e.g., Heritage*, 2005 WL 1594403, **17-18 (C.D. Cal. June 10, 2005) (awarding individual lead plaintiffs as much as $12,500 and $15,000), *Van Vranken,* 901 F. Supp. at 299 (N.D. Cal. 1995) (awarding plaintiff $50,000).   In addition, the incentive award does not come out of the Settlement Fund and if approved will be paid by the Defendants.  Mediator, and retired federal Judge Joel Rosen, was particularly pleased with this approach and recommends the approval of the incentive award.  *See* Declaration of Joel Rosen at ¶ 8 (attached to Smith Declaration as Exhibit "E").  For all of the foregoing reasons, the award for Lead Plaintiffs should be approved.

## V.   CONCLUSION

The creation of the accessibility remediation program, and the establishment of the Settlement Fund, are the result of the diligent and skillful efforts of Lead Counsel. For these efforts, Lead Counsel respectfully requests that the Court approve and enter an Order for an award of attorneys' fees in the amount of $170,000.00, plus reimbursement of expenses in the amount of $80,000.00, plus interest on both

amounts, and approve the requested incentive award to each Class Representative.

Dated: May 12, 2008                    Respectfully submitted,

                                       BRODSKY & SMITH, LLC

                                       By: _Evan J. Smith (SBN 242352)_
                                       Evan J. Smith (SBN242352)

                                       _Class Counsel_